# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMONIA HENDERSON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.:** |
| | : | |
| **THE SCHOOL DISTRICT OF** | : | |
| **PHILADELPHIA,** | : | **COMPLAINT IN CIVIL ACTION** |
| | : | |
| **Defendant.** | : | |
| | : | |

Filed on Behalf of Plaintiff:
Samonia Henderson

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

| | |
|---|---|
| Telephone: | (412) 545-3015 |
| Fax No.: | (412) 540-3399 |
| E-mail: | jward@jpward.com |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMONIA HENDERSON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.:** |
| | : | |
| **THE SCHOOL DISTRICT OF** | : | |
| **PHILADELPHIA,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, Samonia Henderson, by and through the undersigned counsel, J.P. Ward & Associates, LLC., and, specifically, Joshua P. Ward, Esquire, who files the within First Amended Complaint against Defendant, The School District of Philadelphia, of which the following is a statement:

**PARTIES**

1.      Plaintiff, Samonia Henderson (hereinafter "Ms. Henderson"), is an adult individual who currently resides at 3850 Woodhaven Road, Apartment 1805, Philadelphia, Pennsylvania 19154.

2.      Defendant, The School District of Philadelphia (hereinafter "Defendant"), is a school district with its headquarters located at 440 North Broad St, Philadelphia, Pennsylvania 19130.

2

## NATURE OF THE ACTION

3.      This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e *et seq*., the Pennsylvania Human Relations Act ("PHRA") 43 P.S. §§ 951-963, and Section 1981 of the Civil Rights Act of 1866 ("Section 1981") 42 U.S.C. § 1981.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over Ms. Henderson's discrimination claims pursuant to 28 U.S.C. § 1331.

5.      Ms. Henderson is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Eastern Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b).

6.      Ms. Henderson filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") regarding her allegations within the purview of the Pennsylvania Human Relations Act ("PHRA") and Title VII of the 1964 Civil Rights Act ("Title VII") on or about March 17, 2021, under case number 530-2021-02489.  On July 15, 2021, Ms. Henderson was issued a Notice of Suit Rights. A copy of the Notice is attached hereto, made a part thereof, and referenced as "Exhibit A."

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

7.      Ms. Henderson is an African American woman who was employed as a Special Education teacher and Lead Case Manager for Defendant.

8.      Ms. Henderson has over twenty years of experience working in education and mental health, making her highly qualified for the position she held with Defendant.

9.      On or about August 26, 2019, Ms. Henderson began her employment at Abraham Lincoln High School for Defendant.

10.     At this time, Ms. Henderson was given a less desirable classroom than her similarly situated Caucasian counterparts. Furthermore, Ms. Henderson was not given the proper materials to be able to perform the duties of her position to the best of her ability.

11.     The Special Education Liaison, Special Education Case Manager, and Union Representative, Louise Jordan (hereinafter, "Ms. Jordan") was a Caucasian woman who oversaw the Special Education Department for Defendant.

12.     Ms. Jordan made it clear to Ms. Henderson that Ms. Henderson was not welcome in her new position.

13.     Mr. Jordan stated to Assistant Principal, Carol Rhodes (hereinafter, "Ms. Rhodes") that Ms. Henderson's position was a "job for a white person" and because of that, she did not want Ms. Henderson to be a lead liaison in the Special Education program.

14.     Upon hearing this blatant racial discrimination from Mr. Jordan regarding Ms. Henderson, Ms. Rhodes informed the Principal, Jack Nelson, (hereinafter, "Mr. Nelson") of the situation, however, the concerns were not dealt with.

15.     Following this, Ms. Henderson also went to Mr. Nelson to report the situation. Mr. Nelson assured Ms. Henderson that he would investigate, however, nothing was done to remedy the situation.

16.     Upon learning of the report regarding the race-based discrimination, Ms. Jordan aggressively approached Ms. Henderson and reprimanded her regarding the report.

17.     Being close-by, and observing the reprimand, Ms. Henderson's coworker, an IT employee, informed Ms. Henderson that he heard the reprimand and stated that Ms. Jordan has a

4

regular pattern of racial discrimination toward African American employees and further that Ms. Jordan has commented that she wants a workplace with exclusively Caucasian coworkers.

18.　　Following the hostile encounter she endured from Ms. Jordan, Ms. Henderson reported this to Ms. Rhodes.

19.　　Ms. Rhodes stated that she had attempted to go to the Union regarding Ms. Jordan's behavior, however, nothing was done.

20.　　Ms. Henderson again went to her superiors at Defendant and was told the situation was being investigated.

21.　　Shortly following this, Ms. Rhodes was terminated from her position.

22.　　On or about January of 2020, Ms. Henderson filed a formal report with the Union. The Union then filed a grievance, although this grievance was not filed at Ms. Henderson's request.

23.　　Following this grievance, retaliation ensued, and Ms. Henderson was removed from her position at Abraham Lincoln High School on or about June of 2020.

24.　　Ms. Henderson was transferred to work at Austin Meehan Middle School instead, which is a school still under the umbrella of Defendant.

25.　　The liaison from this new school stated that reports were made by Ms. Jordan, the liaison at the previous school, that Ms. Henderson is difficult, does not perform her job correctly, and does not know how to treat the children.

26.　　Additionally, Ms. Henderson was subjected to a performance evaluation. This evaluation was given based on the new practice of virtual learning, due to the COVID-19 Pandemic.

27.　　Upon information and belief, none of Ms. Henderson's coworkers were subjected to this performance evaluation.

28.     On or about October 2020, Ms. Henderson went to the Union to request a new school to be transferred to, however, she was not transferred.

29.     Additionally, the Union representative from Austin Meehan Middle School stated to Ms. Henderson that if she continued to go to the Union, there will be "hell to pay" and he did not want Ms. Henderson to endure the retaliation.

30.     Ms. Henderson later invoked sick leave due to the detrimental effect that the racially hostile work environment had on her mental health.

31.     On or about May 12, 2021, this sick leave expired, and Ms. Henderson was forced to terminate her position with Defendant or face continued discriminatory treatment.

## <u>COUNT I</u><br>RACIAL DISCRIMINATION IN<br>VIOLATION OF SECTION 1981

32.     Ms. Henderson incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

33.     42 U.S.C. § 1981(a) provides that:

> "[a]ll persons within the jurisdiction of the United States shall have the same right … to <u>make and enforce contracts</u>, to sue, be parties, give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens."

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); see also, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020).

34.     Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

35.     Ms. Henderson experienced discrimination when she was given a less desirable classroom and equipment, transferred from the school which she was hired, given a negative

performance evaluation, and ultimately forced out of her position following her sick leave expiration.

36.     Defendant subjected Ms. Henderson to the above-mentioned adverse employment actions, and not her Caucasian counterparts. Therefore, Defendant deprived Ms. Henderson of the full and equal benefit of all laws as is enjoyed by white citizens, in direct violation of Section 1981.

37.     Defendant subjected Ms. Henderson to the adverse employment actions because of her race, and therefore deprived her the same right to make and enforce contracts as is enjoyed by white citizens, in direction violation of Section 1981.

38.     Defendant's actions against Ms. Henderson were undertaken with wanton, willful and reckless indifference to Ms. Henderson's federally protected right to make and enforce contracts regardless of her race.

39.     As a direct and proximate result of the aforementioned conduct, Ms. Henderson suffered actual damages, including, but not limited to, lost wages, benefits, emotional distress, anxiety, loss of reputation, loss of professional opportunities, humiliation and severe inconvenience all in the past present and future.

WHEREFORE, Plaintiff, Ms. Henderson, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

**COUNT II**
**HOSTILE WORK ENVIRONMENT IN**
**VIOLATION OF SECTION 1981**

40.     Ms. Henderson incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

41.     To establish a § 1981 claim alleging a hostile work environment based on race, a plaintiff must show that: "(1) the employee suffered intentional discrimination because of his/her race, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability, meaning the employer is responsible." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017)

42.     Ms. Henderson faced discriminatory treatment in the form of racially discriminatory culture and environment throughout her employment.

43.     Ms. Henderson's supervisor, Ms. Jordan created a racially hostile work environment when she stated that the position of special education liaison was "for a white person" and further made it clear that she wished to work solely with Caucasian employees.

44.     Furthermore, Defendant retaliated against Ms. Henderson when she reported the hostile work environment by transferring her to a different school and giving her negative performance reviews while not reviewing her similarly situated Caucasian coworkers.

45.     Finally, Defendant forced Ms. Henderson to retire due to the exhaustion of her sick leave which she used because of the effect which the hostile work environment had on her mental health.

46.     Therefore, Defendant permitted, condoned, and perpetuated the racially hostile work environment to which Ms. Henderson was forced to endure, and therefore deprived her of the same right to make and enforce contracts as is enjoyed by white citizens, in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

47.     Defendant's actions against Ms. Henderson were undertaken with reckless indifference to Ms. Henderson's federally protected right to make and enforce contracts irrespective of her race.

48.     As a result of Defendant's race discrimination against Ms. Henderson, Ms. Henderson has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Plaintiff, Ms. Henderson, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

<u>**COUNT III**</u>
**RACIAL DISCRIMINATION IN VIOLATION**
**OF TITLE VII AND THE PHRA**

49.     Ms. Henderson incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

50.     Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. §2000e-2(a)(1).

51.     When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under

circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck & Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 36 L. E.D. 29 668 (1973).  See also *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

52.     The same legal standards apply to Title VII and PHRA claims. *Connelly v. LaneConstr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (citing *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 (3d Cir. 2000)). Further, the same standards apply to claims under Title VII and the PHRA on a summary judgment motion. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the Court's analysis of the Title VII claims also applies to the PHRA claims. *Phillips v. Septa*, CIVIL ACTION NO. 16-0986, 6-7 (E.D. Pa. Feb. 12, 2018).

53.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

54.     Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Morales v. Pnc Bank, N.A.*, 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

55.     Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id*.

56.     A plaintiff may also satisfy the fourth element by "showing other circumstances that give rise to an inference of unlawful discrimination." *Senador v. Zober Indus.*, 2009 U.S. Dist. LEXIS 36059 *9 (E.D. Pa. 2009).

57.     Ms. Henderson was an African American employee at Defendant and was regarded in a fashion that was different from her Caucasian counterparts.

58.     Ms. Henderson was qualified for her position and performed the duties of his position satisfactorily.

59.     Ms. Henderson faced discriminatory treatment in the form of a racially discriminatory culture and environment perpetuated by her supervisor, Ms. Jordan.

60.     This racially discriminatory environment included a less desirable classroom and supplies than her Caucasian coworkers, the comment made by Ms. Jordan that the position Ms. Henderson held was a "job for a white person", and further comments made that indicated Ms. Jordan wished to work solely with Caucasian coworkers.

61.     Further, Ms. Henderson endured discriminatory treatment in the form of regular disparate treatment. This disparate treatment manifested in Ms. Henderson being given a negative performance review upon her arrival at Austin Meehan Middle School, when her similarly situated Caucasian coworkers were not subjected to the same performance review standards.

62.     As a direct and proximate cause of the aforementioned conduct, Ms. Henderson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

63.     As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Ms. Henderson, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

## COUNT IV
## HOSTILE WORK ENVIRONMENT IN VIOLATION
## OF TITLE VII AND THE PHRA

64.     Ms. Henderson incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

65.     The protections established by Title VII include "protection against a hostile work environment that is abusive to an employee on the basis of his or her race." *Bryant v. Wilkes-Barre Hops., Co., LLC*, 146 F. Supp. 3d 628, 645 (M.D. Pa. 2015).

66.     In order to establish a hostile work environment claim, a plaintiff must show that: "(1) he suffered intentional discrimination because of race and/or national origin; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of vicarious or respondent superior liability." *Senador* at *25 (citing *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001)).

67.     The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. See *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

68.     Because Complainant is able to state a prime facie case for race discrimination and hostile work environment under Title VII, so too will he be able to state such a claim under the PHRA.

69.     The United States Supreme Court "has held that when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII . . . is violated." *Washington v. Martinez*, 2004 U.S. Dist. LEXIS 4325 at *16 - *17 (E.D. Pa. 2004).

70.      Courts have held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Washington* at *17 - *18 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993)).

71.     Conditions that create a hostile working environment "may constitute a significant change in benefits and establish the adverse action necessary to state a prima facie case of discrimination." *Washington* at *17.

72.     Ms. Henderson faced a hostile work environment in the form of racially discriminatory treatment, culture and environment throughout her employment.

73.     Ms. Henderson's supervisor, Ms. Jordan created a racially hostile work environment when she stated that the position of special education liaison was "for a white person" and further made it clear that she wished to work solely with Caucasian employees.

74.     Furthermore, Defendant retaliated against Ms. Henderson when she reported the hostile work environment by transferring her to a different school and giving her negative performance reviews while not reviewing her similarly situated Caucasian coworkers.

75.     Finally, Defendant forced Ms. Henderson to retire due to the exhaustion of her sick leave which she used because of the effect which the hostile work environment had on her mental health.

76.     Therefore, Defendant permitted, condoned, and perpetuated the racially hostile work environment to which Ms. Henderson was forced to endure.

77.     As a direct and proximate cause of the aforementioned conduct, Ms. Henderson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

78.     As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Ms. Henderson, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

## COUNT V
## RETALIATION IN VIOLATION
## OF TITLE VII AND THE PHRA

79.     Ms. Henderson incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

80.     To establish a prima facie case of retaliation under Title VII, a plaintiff must provide evidence that: (1) he "engaged in activity protected by Title VII"; (2) the employer took an "adverse employment action" against him; and (3) there was a "causal connection" between his "participation in the protected activity and the adverse employment action." *Kengerski v. Allegheny Cty.*, 435 F. Supp. 3d 671, 676 (W.D. Pa. 2020) (citing to *Moore v. City of Philadelphia*,

461 F.3d 331, 341-42 (3d Cir. 2006); See also, *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

81.     The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. See *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

82.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

83.     "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality…" *Lichtenstein v. University of Pittsburgh Medical Center* 691 F.3d 294, at 307 (3d Cir.2012), citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3rd Cir.2007).

84.     Ms. Henderson engaged in a protected activity protected by Title VII by reporting the racial discrimination in the workplace to the school principal and the Union.

85.     Despite Ms. Henderson's reports, no corrective action was taken.

86.     Rather than attempt to address the issues, Ms. Henderson was transferred to a different school by Defendant.

87.     Additionally, following her transfer to Austin Meehan Middle School, Ms. Henderson was told that her superiors were informed she was "difficult" and she was then subjected to heightened scrutiny and given a negative performance evaluation.

88.     When Ms. Henderson requested the Union to transfer her to a new school but was denied the option to transfer.

15

89.    Ms. Henderson was forced to utilize sick leave due to the detrimental effect which the racially hostile work environment and retaliation had on her mental health.

90.    Ms. Henderson's sick leave was exhausted on May 12, 2021, and she was forced to retire from her position with Defendant.

91.    As a direct and proximate cause of the aforementioned conduct, Ms. Henderson suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

92.    As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Ms. Henderson, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Ms. Henderson requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.


                                        Respectfully submitted,

                                        **J.P. WARD & ASSOCIATES, LLC.**


Date: October 11, 2021                  By: _/s/ Joshua P. Ward_____
                                             Joshua P. Ward (Pa. I.D. No. 320347)
                                             Kyle H. Steenland (Pa. I.D. No. 327786)

                                             J.P. Ward & Associates, LLC
                                             The Rubicon Building
                                             201 South Highland Avenue
                                             Suite 201
                                             Pittsburgh, PA 15206

                                             Counsel for Plaintiff